# SETTLEMENT AGREEMENT

WHEREAS, Blake Equipment Company, Inc. ("Blake") filed a lawsuit in the United States District Court for the District of Rhode Island against A&W Artesian Well Co. ("A&W Artesian") and H. Allen Follett ("Follett") for payment for equipment delivered to A&W Artesian, which lawsuit is titled *Blake Equipment Co., Inc. v. A&W Artesian Well Company, et al.*, CA No. 04-167-S (the "Litigation"); and

WHEREAS, Blake, A&W Artesian and Follett (the "Parties") desire to resolve and settle the Litigation on terms agreeable to all of them without the risk, expanse and delay of further court proceedings;

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth below, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. A&W Artesian shall pay to Blake or its designee $280,000 upon the execution of this Settlement Agreement.

2. A&W Artesian shall sign a Promissory Note (the "Note") in favor of Blake for $412,216. The Note shall be in the form attached hereto as Attachment A. Commencing November 1, 2004, A&W Artesian shall make monthly payments to Blake as provided in the Note.

3. A&W Artesian shall sign a security agreement giving Blake a first security position on A&W Artesian's drilling rigs numbered DT 7 (a 1988 Ford L900, VIN 1FDZY90W4JVA28215, with a 1989 Drilltech Model T25K Serial No. 731497) and DT 8 (a 1996 Ford LNT8000, VIN 1FDZW82E6TVA31897, with a 1996 Drilltech Model T25K, Serial No. 732115) in the form attached hereto as Attachment B (the "Security Agreement"). In the event that A&W Artesian fails to make any payment specified in paragraphs 1 and 2 above

within ten (10) days of the date the payment is due, Blake shall be entitled to exercise any or all of its rights and remedies provided for in the security agreement attached hereto as (the "Security Agreement").

4. Blake's rights under this Settlement Agreement, the Note, and the Security Agreement shall be cumulative and nonexclusive. A&W Artesian and Follett agree that Blake may pursue any or all of its rights and remedies under the Settlement Agreement, the Note, and the Security Agreement at any time consistent with their terms, and that proceeding under one agreement shall not be deemed to waive or limit Blake's rights under the other agreements in any way.

5. A&W Artesian shall provide Blake with copies of all balance sheets and profit and loss statements prepared by or for A&W Artesian in the regular course of business until the payments called for by paragraphs 1 and 2 have been made in full.

6. In the event that A&W Artesian fails to make any payment required by paragraphs 1 or 2 above within ten (10) days of the scheduled payment date, and five (5) days have elapsed since a notice of default has been sent to A&W by Blake, A&W Artesian and Follett agree that Blake shall be entitled without any further preconditions to enter a judgment by consent against them ("Consent Judgment") in the United States District Court for the District of Rhode Island and to immediately levy and execute on the Consent Judgment without need for further court action. A&W and Follett shall cooperate and carry out any acts necessary for Blake to immediately secure the Consent Judgment. The Consent Judgment shall be for the total amount due under paragraphs 1 and 2 that A&W Artesian has not paid to Blake, plus prejudgment interest calculated from the date that the payment or payments became overdue, plus reasonable attorneys' fees for entering and collecting on the Consent Judgment.

7. In consideration of the mutual promises and covenants contained herein, Blake will execute and file with the court a dismissal stipulation dismissing all claims made in the Litigation, with prejudice, each party to bear its own costs and fees.

8. A&W Artesian hereby releases and forever discharges Blake, its successors, affiliates, agents, predecessors, subsidiaries, shareholders, officers, directors, employees, insurers and other agents and assigns, from any and all manner of actions, causes of action, debts, dues, claims, suits, contracts, accounts, judgments, obligations, damages and liabilities, both at law and in equity, that A&W Artesian ever had or now have against Blake, arising out of or relating to the facts at issue in the Litigation. This paragraph shall not release and discharge Blake from warranty or liability claims unrelated to the debt at issue in the Litigation.

9. The terms of this Agreement shall not be revealed to any third persons or entities without the prior express written consent of all Parties, except that the Parties shall not be prohibited from (i) disclosing to individual third parties in response to individual inquiries (but not by means of a press release or other widespread public broadcast) the fact that the matter has been resolved on terms satisfactory to all Parties, without otherwise disclosing such terms; or (ii) disclosing to their auditors, tax advisors, accountants, and attorneys such information as is reasonably necessary for them to provide professional services; or (iii) making such disclosures as are required by law, including in response to a valid subpoena or court order. The Parties shall not disparage each other, either orally or in writing.

10. The Parties hereby declare that they fully understand the terms of this Settlement Agreement; that they voluntarily accept the consideration offered for any acts or conditions agreed to hereunder; that they are executing same with the intention of making a full

and final compromise and settlement of all claims pending against one another in the Litigation; that they have not relied upon any representation or statement, written or oral, not set forth in this document; and that they have consulted with counsel regarding the content and effect of this Settlement Agreement.

11. The promises and covenants contained herein are not to be construed as an admission of liability.

12. This Settlement Agreement contains the entire agreement and understanding concerning this subject matter between the Parties.

13. The invalidity or unenforceability of any particular provision of this Settlement Agreement shall not affect the other provisions hereof, and this Settlement Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. This Settlement Agreement may not be modified or changed orally, but only by an agreement in writing signed by the Parties.

15. This Settlement Agreement shall be construed under the laws of the State of Rhode Island.

16. This Settlement Agreement may be executed in counterparts.

17. The prevailing party in any suit brought to enforce the terms of this Settlement Agreement shall be entitled to recover its reasonable costs and attorneys fees incurred in connection with the suit.

Blake Equipment Company, Inc.

DATED: November 8, 2004

By: ______________________

Its:

A & W Artesian Well, Co.

DATED: November 5, 2004

By: President
Its:

DATED: November 5, 2004

H. Allen Follett
H. Allen Follett

751948_1/248-2

**PROMISSORY NOTE**

$412,216 Providence, Rhode Island November __, 2004

FOR VALUE RECEIVED, the undersigned, A & W Artesian Well Company, a Rhode Island corporation with a mailing address of 706 St. Paul Street, North Smithfield, Rhode Island, 02895 ("Borrower"), promises to pay to Blake Equipment Co., Inc., a Connecticut corporation with a mailing address of 61 West Dudley Town Road, Bloomfield, Connecticut, 06002 ("Lender"), or order in immediately available funds and in lawful currency of the United States of America, the principal sum of $412,216, with interest of six percent (6%) per annum, on any and all principal amounts remaining unpaid hereunder from time to time until payment in full hereof.

Interest hereunder shall be calculated on the basis of a three hundred sixty (360) day year, but shall accrue and be payable on the basis of the actual number of days elapsed in each month.

Borrower shall make monthly payments to Lender of $20,000. Payments shall be due the first day of each month, commencing December 1, 2004. Each payment shall be allocated first to pay interest that has accrued on the principal balance as of the date the payment is received, and second to the reduction of principal. If the principal and interest due to Lender pursuant to this Note is less than $20,000, Borrower shall pay the unpaid balance in full.

Borrower expressly agrees that no renewal or extension granted, nor any release of, nor any dealings between a holder hereof and any person now or hereafter interested herein or in any of the security for this Note, whether as owner, encumbrancer, guarantor or otherwise, shall discharge, extend or in any way affect the obligations of Borrower as principal debtor hereunder.

Borrower may prepay all or any portion of the principal balance of this Note at any time and from time to time without payment of any penalty, fee or premium. No prepayment shall postpone or waive any required payment due under this Note.

The indebtedness evidenced by this Note is secured, inter alia, by a security agreement (the "Security Agreement").

Upon the occurrence of any one or more of the following events of default:

1. failure of Borrower to make any payment when due hereunder (no notice thereof being required); or

2. failure to pay or perform, or default in the payment or performance of, any covenants, agreements or conditions required to be paid or performed hereunder or under the Guarantee or any other security for this Note; or

3. transfer by Borrower to any other entity or person of any interest in the whole or any of the security for this Note without the prior written consent of the holder of this Note; or

4. death, insolvency, or the appointment of a permanent receiver for or for any of the property of, or an assignment for the benefit of creditors, or the filing of either a petition under any federal or state bankruptcy, receivership, insolvency or debtor relief law or of a petition for any readjustment of indebtedness, composition or extension by (or the pendency of an involuntary petition undismissed for a period of thirty (30) days against), Borrower or a Guarantor.

this Note shall, in any such event, at the option of the holder, become immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Borrower and each and every person now or hereafter liable, absolutely or contingently, for the payment of the whole or any part of this Note. All property, credits, claims, and balances of whatever nature of Borrower at any time in the possession or control of or owing by Lender or its agents may at any time be set off or otherwise applied by Lender to the payment of all amounts owing in respect of this Note and any other liabilities, obligations, and indebtedness of Borrower to Lender, or any part thereof, in such order as Lender shall determine. Borrower hereby appoints Lender, acting through any of its representatives, as attorney to effect any of the foregoing. Failure to exercise any of such options shall not constitute a waiver of the right to exercise the same at any other time for the same or any other cause.

Borrower agrees to pay, or reimburse Lender, for all reasonable costs and expenses (including reasonable attorneys' fees) incurred by the holder of this Note in the exercise by the holder hereof of any rights, remedies, powers, or privileges authorized hereunder or under any documents or instruments securing this Note, or by law, including but not limited to all reasonable costs and reasonable attorneys' fees and disbursements incurred in any action or proceeding to collect this Note or any negotiations or discussions regarding this Note or under any documents or instruments securing this Note.

Overdue principal hereof, whether as a result of late payment or non-payment upon default and acceleration, and (to the extent allowed by law) overdue interest shall bear interest, which Borrower agrees to pay, at a rate of twelve percent (12%) per annum determined daily (the "Default Rate") until paid in full. Upon default,

all outstanding principal shall bear interest, which the Borrower agrees to pay, at the Default Rate.

Notwithstanding anything in this Note or any other instrument to the contrary, Borrower shall not be required to pay interest on the indebtedness evidenced by this Note in excess of the maximum interest permissible under applicable law. If under any circumstances whatsoever Lender receives as a loan charge or as interest under this Note an amount which would exceed the maximum permissible interest under applicable law, such excess amount shall be applied to reduce the principal balance of the indebtedness evidenced by this Note and not to payment of interest.

Borrower hereby waives presentment, notice of dishonor, protest or other notice of any kind whatsoever, all of which are hereby expressly waived by Borrower(s) and each and every person now or hereafter liable, absolutely or contingently, for the payment of the whole or any part of this Note.

Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law. If any portion of this Note is declared invalid for any reason in any jurisdiction, then such declaration shall have no effect upon the remaining portions of this Note. In addition, the entirety of this Note shall continue in full force and effect in other jurisdictions and said remaining portions of this Note shall continue in full force and effect in the subject jurisdiction as if this Note had been executed with the invalid portions thereof deleted.

All references to the "Borrower" shall be deemed to apply to each of the persons executing this Note and any one or more of them in combination. All references to Lender shall be deemed to apply to any holder for the time being of this Note, and the terms hereof shall be binding on the heirs, administrators, executors, successors and assigns of Borrower. This Note shall be deemed to have been executed and delivered in the State of Rhode Island, and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State without resort to its conflict of laws rules.

Except as otherwise specified herein or by notice, all notices, communications and demands hereunder shall be in writing and sent by certified or registered mail, return receipt requested, or by overnight delivery service, with all charges prepaid, to the applicable party or parties at the addresses set forth below or by facsimile transmission (including, without limitation, computer generated facsimile), promptly confirmed in writing sent by first class mail to the facsimile numbers and addresses set forth below:

(a) If to Borrower, to: A & W Artesian Well Company
706 St. Paul Street
North Smithfield, Rhode Island 02895

with a copy to: Peter J. Furness, Esq.
Brennan, Recupero, Casicone, Scungio & McAllister, LLP
362 Broadway
Providence, RI 02909

(b) If to Lender, to: Blake Equipment Co., Inc.
61 West Dudley Town Road
Bloomfield, Connecticut 06003

with a copy to: Robert K. Taylor, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, Rhode Island 02903
Facsimile No.: (401) 861-8210

or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties given in accordance with this Section at least ten (10) days in advance thereof. All such notices and correspondence shall be deemed given upon the earliest to occur of (i) actual receipt, (ii) if sent by certified or registered mail, three (3) business days after being postmarked, (iii) if sent by overnight delivery service, when received or when delivery is refused, or (iv) if sent by facsimile, when receipt of such transmission is acknowledged.

IN THE EVENT THAT LENDER BRINGS ANY ACTION OR PROCEEDING IN CONNECTION HEREWITH OR IN CONNECTION WITH THIS NOTE, THE GUARANTEE OR ANY INSTRUMENT OR DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH IN ANY COURT OF RECORD OF THE STATE OF RHODE ISLAND OR THE UNITED STATES COURT OF RECORD FOR ANY DISTRICT LOCATED IN THE STATE OF RHODE ISLAND, BORROWER HEREBY IRREVOCABLY CONSENTS TO AND CONFERS PERSONAL JURISDICTION OF SUCH COURT OVER BORROWER BY SUCH COURT. IN ANY SUCH ACTION OR PROCEEDING, BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER PROCESS AND AGREES THAT SERVICE THEREOF MAY BE MADE UPON BORROWER BY MAILING A COPY OF SUCH SUMMONS, COMPLAINT OR OTHER PROCESS BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, POSTAGE PREPAID, TO BORROWER AT THE ADDRESS SET FORTH HEREIN. BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY LITIGATION IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THIS NOTE OR ANY INSTRUMENT OR DOCUMENT DELIVERED IN CONNECTION HEREWITH, OR THE VALIDITY, PROTECTION,

INTERPRETATION, COLLECTION OR ENFORCEMENT THEREOF, OR ANY OTHER CLAIM OR DISPUTE HOWSOEVER ARISING BETWEEN BORROWER AND LENDER.

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and date first above written.

Witnessed by: [signature] ______________________

A & W Artesian Well Company

By: R. Allen Follett ______________________

Its: Pres ______________________

740053_1/248-2

# SECURITY AGREEMENT

1. GRANT OF SECURITY INTEREST. **A & W ARTESIAN WELL CO.**, a Rhode Island company having a mailing address of 706 St. Paul Street, North Smithfield, Rhode Island 02896 (hereinafter referred to as the "Debtor"), for value received, hereby grants to **BLAKE EQUIPMENT CORPORATION, INC.**, a Connecticut corporation having an address at 61 West Dudley Street, Bloomfield, Connecticut 06002 (herein referred to as the "Secured Party"), a security interest in the following property (herein referred to as the "Collateral"):

(a) the property described in Schedule A annexed hereto, and made a part hereof;

(b) all property, goods and chattels of the same classes as those on Schedule A acquired by the Debtor subsequent to the execution of this Agreement and prior to its termination;

(c) proceeds of the Collateral; and

(d) all increases, substitutions, replacements, additions, and accessions thereto,

to secure the payment and performance of the Debtor's obligations pursuant to Debtor's Note dated the date hereof in the amount of FOUR HUNDRED TWELVE THOUSAND, TWO HUNDRED SIXTEEN AND 00/100 DOLLARS ($412,216.00), with interest, together with any additional sums that may hereafter be advanced under either of said instruments, and this Security Agreement shall secure the payment of any and all extensions or renewals and successive extensions or renewals of said Note.

2. OWNERSHIP OF COLLATERAL. Debtor represents that it is the owner of all property described in Schedule A hereto; that it has the right to convey a security interest in such property to the Secured Party; and that no other person has or purports to have any right, title, lien encumbrance, adverse claim, or interest in such property except as set forth in Schedule B annexed hereto and made a part hereof.

3. USE OF COLLATERAL. Debtor represents that the Collateral has been acquired and is used by the Debtor, or will be acquired and will be used, primarily for business purposes.

4. ACTS TO BE PERFORMED BY DEBTOR. Debtor agrees as follows:

(a) Payment and Performance. Debtor shall pay and perform all of the obligations secured by this Agreement according to their terms;

(b) Further Assurances. Debtor shall defend the title to the Collateral against all persons and against all claims and demands whatsoever, and shall indemnify Secured Party for all costs, fees, and expenses incurred in connection with such claims and demands. On demand by the Secured Party, Debtor shall (i) furnish further assurance of title, (ii) execute any

written instrument or do any other acts necessary to make effective the purposes and provisions of this Agreement, and (iii) execute any instrument or statement required by law or otherwise in order to perfect or continue the security interest of the Secured Party in the Collateral and pay all costs of filing in connection therewith.

(c) Possession and Removal. Debtor may remain in possession of the Collateral until default under this Agreement.

(d) Sale and Exchange. Debtor shall not, without the written consent of the Secured Party, sell, exchange, contract to sell, lease, encumber or transfer the Collateral and whether or not such consent has been obtained, the proceeds of such sale, exchange, or transfer shall be applied to the obligations secured by this Agreement, or subject to the security interest of this Agreement.

(e) Certain Acts Required.

(i) Property Care and Inspection. Debtor shall maintain the Collateral in good and saleable condition, repair it if necessary, clean, shelter, and otherwise deal with the Collateral in all such ways as are considered good practice by owners of like property. Debtor shall use the Collateral lawfully and only as permitted by applicable insurance policies. The Secured Party may enter upon the premises where the Collateral is located and examine it at any time and any number of times.

(ii) Insurance. Debtor shall keep the Collateral insured for the benefit of the Secured Party against loss by fire and other casualties or risks in such form and amount, with such companies, as may be required by the Secured Party. Debtor agrees to deliver such insurance policies to the Secured Party upon request and authorizes the Secured Party to make or compromise any claim thereunder. Debtor hereby appoints the Secured Party the attorney for the Debtor in obtaining, adjusting and cancelling any such insurance and endorsing settlement drafts and hereby assigns to the Secured Party all sums which may become payable under such policies, including return premiums and dividends, as additional security for Debtor's performance hereunder. Debtor shall give immediate written notice to the Secured Party and to all insurers of loss or damage to the Collateral and shall promptly file proofs of loss with such insurers;

(iii) Encumbrances and Taxes. Debtor shall keep the Collateral free from all prior security interests (other than of this Agreement), liens, claims, charges, encumbrances, taxes and assessments and shall pay when due all taxes and assessments relating to the Collateral.

(iv) Information. Debtor shall furnish promptly to Secured Party any information the Secured Party may reasonably require. Debtor represents and warrants that any information at any time supplied to the Secured Party (including, but not limited to, the value and condition of the Collateral, and the accuracy of any financial statements) is (or will be) correct.

(f) Failure to Perform Acts.

(i) Performance by Secured Party. Upon failure by the Debtor to perform the acts described in paragraph (e) above, the Secured Party is authorized and has the option to perform any of said acts in any manner deemed proper by the Secured Party, without waiving any rights to enforce this Agreement.

(ii) Advances Secured. The reasonable expenses (including, without limitation, attorneys' fees and the cost of any insurance premium and payment of taxes or other charges) paid by the Secured Party in respect to Collateral shall be deemed advanced to the Debtor by the Secured Party, shall bear interest at the highest rate provided in the Note, and shall be secured by this Agreement.

5. WHEN OBLIGATIONS BECOME DUE. At the option of the Secured Party, the obligations secured by this Agreement shall become immediately due and payable in full upon the happening of one or more of the following events:

(a) Default in Obligations. If the Secured Party shall elect to accelerate the maturity of the indebtedness evidenced by said Note pursuant to the provisions of the Note or of any other instrument which may be held by the Secured Party as security for the Note.

(b) Default in Security Agreement. If the Debtor shall fail to perform any covenant, condition or provision of this Agreement or if any representation herein shall be false or if any warranty herein shall be breached.

(c) Miscellaneous. Without in any way limiting the generality of the foregoing:

(i) If the Debtor shall fail to comply with any statute, requirement, rule, regulation, order or decree, of any federal, state, municipal or other governmental authority relating to the Collateral.

(ii) If the Collateral or any portion thereof, or any interest of the Debtor therein, be levied upon or attached by virtue of an execution issued upon any judgment or a writ of attachment of any other process.

6. REMEDIES UPON DEFAULT.

(a) General. In the event of default under this Agreement, the Debtor and the Secured Party shall have the rights and remedies provided in the Uniform Commercial Code, and in addition those provided in this Agreement.

(b) Assembly of Collateral. In the event of default the Debtor shall, upon request of the Secured Party, assemble the Collateral and make it available to the Secured Party at a place reasonably convenient to both parties designated by the Secured Party.

(c) Cash or Credit Sales. It is agreed that sales for cash or on credit to a wholesaler, retailer, or user of property of the type subject to this Agreement or at public or private auction are all commercially reasonable.

(d) Notice of Disposition. The Secured Party shall give the Debtor notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is to be made by sending notice, first-class postage prepaid and addressed to the Debtor at the latest address of Debtor appearing on the records of the Secured Party at least five (5) days before the time of the sale or other disposition, which provisions for notice of the sale Debtor and Secured Party agree are reasonable.

(e) Application of Proceeds. Any proceeds of any disposition of any of the Collateral may be applied by the Secured Party to the payment of expenses in connection with the Collateral, including reasonable attorneys' fees and legal expenses, and any balance of such proceeds may be applied by the Secured Party toward the payment of such of the obligations secured by this Agreement, and in such order of application, as the Secured party may from time to time elect.

7. COVENANT TO PAY DEFICIENCY. Upon default if the sale or other disposition of the Collateral fails to satisfy the obligations secured by this Agreement and the reasonable expenses of retaking, holding, preparing for sale, selling and the like, including reasonable attorneys' fees and legal expenses incurred by the Secured Party in connection with this Agreement or the obligations it secures, the Debtor shall be liable for any deficiency.

8. MISCELLANEOUS. The Debtor and the Secured Party agree as follows:

(a) Waiver of Certain Matters. The Debtor expressly waives all requirements of presentment, protest, notice of protest, notice of nonpayment and dishonor.

(b) Non-Waiver of Certain Matters. Any failure by the Secured Party to exercise any right set forth in this Agreement shall not constitute a waiver thereof. Nothing in this Agreement or in the obligations secured by it shall preclude any other remedy by action or otherwise for the enforcement of this Agreement or the payment in full of the obligations secured by it.

(c) No Discharge. No party to this Agreement shall be discharged by any extension of time, additional advances and notes, renewals and extensions of any note, the taking of further security, extinguishment or release of the security interest as to all or any part of the Collateral, or any other act except a release or discharge of the security interest upon the full payment of the obligations secured by this Agreement, including charges, expenses, fees, costs and interest.

(d) Succession. This Agreement shall bind the respective heirs, executors, administrators, successors and assigns of the Debtor and the Secured Party.

(e) Governing Law. The rights and duties of the parties under this Agreement shall be governed by the law of the State of Rhode Island.

Signed this 5 day of November, 2004.

Signed, sealed and delivered
in the presence of:

A & W ARTESIAN WELL CO.

______________________________

By: ______________________________
Pres.
Duly Authorized

## SCHEDULE A

| DEBTOR | SECURED PARTY |
|---|---|
| A & W Artesian Well Co.<br>706 St. Paul Street<br>North Smithfield, RI 02896 | Blake Equipment Co., Inc.<br>61 West Dudley Town Road<br>Bloomfield, CT 06002 |

All of Debtor's right, title and interest in and to the machinery and equipment owned by the Debtor identified below:

1. Drilling Rig No. DT 7
(a 1988 Ford L900, VIN 1FDZY90W4JVA28215, with a 1989 Drilltech Model T25K Serial No. 731497)

2. Drilling Rig DT 8
(a 1996 Ford LNT8000, VIN 1FDZW82E6TVA31897, with a 1996 Drilltech Model T25K, Serial No. 732115)

765205_1/248-2